**Gaster v. Elderkin**
**Elderkin v. Gaster**

*Dale A. Betty*, for purchaser.

*Joseph T. Doyle*, for developer.

SAND, J., May 19, 1969.—This is a case of first impression.

Richard L. Elderkin and Claire H. Elderkin, his wife, purchased a home from Gerald W. Gaster, a developer, by means of an agreement of sale for land and a construction agreement for the total consideration of $26,430. Under the terms of the construction agreement, the Elderkins were to pay Gaster $20,430 in accordance with an attached schedule. A dispute arose, however, concerning the quality of the water supply at the Elderkins' new home, and only $16,-344.00 has been paid to Gaster under the contract, leaving a balance of $4,086. Gaster instituted suit in

assumpsit as of no. 9838 of 1963 for the balance due, naming the Elderkins as defendants. The Elderkins subsequently brought an action in equity as of no. 3558 of 1967 naming Gaster defendant and praying that the court order Gaster to supply them with an adequate supply of unpolluted water or allow them to do the same at Gaster's expense. The cases were consolidated for the purpose of trial and tried before me without a jury.

## FINDINGS OF FACT

1. Gerald W. Gaster (hereinafter "Gaster") is an individual engaged in the construction and sale of new homes and has been so engaged for approximately 10 years.

2. Richard L. Elderkin and Claire H. Elderkin (hereinafter "Elderkin") are individuals, husband and wife.

3. January 16, 1963, Elderkin and Gaster entered into an agreement of sale whereby Gaster agreed to sell Lot No. 5 containing approximately 40,000 square feet in Spring Valley, Middletown Township, Delaware County, Pa., to Elderkin and to build thereon a ranch-type dwelling similar to the home on Lot No. 4, for a total consideration of $26,430.

4. January 31, 1963, Elderkin took title to the property, signed a construction agreement with Gaster and entered into a construction mortgage.

5. By the terms of the construction agreement, Elderkin promised to pay Gaster the sum of $20,430. on a stage pay-out for construction of a new home.

6. Elderkin has paid Gaster the sum of $16,344 out of the construction fund, leaving a balance in the construction fund not paid to Gaster in the amount of $4,086.

7. By the terms of the construction agreement and related documents, the parties agreed that the new

home was to be supplied water by a private, individual well system on the Elderkin property, built by Gaster.

8. Prior to Gaster engaging in the construction business, he had been engaged in the business of drilling water wells.

9. Gaster was the developer of Spring Valley, Middletown Township, Delaware County, consisting of 32 lots upon which he constructed 31 homes, one lot being sold the adjoining homeowner.

10. Gaster advertised "homes for sale" in newspapers and by on-site signs, and sold the homes by use of a sample home.

11. Except for the one instance in which Gaster sold a lot to the adjacent homeowner, he sold no lots upon which he did not construct a home, and he refused to sell Lot No. 5 to Elderkin unless he could build the house thereon.

12. Prior to entering any agreement with Gaster, Elderkin was wary of well water and specifically was aware that problems relating to the quality of well water sometimes arise.

13. Neither the construction agreement, related documents nor the deed to Elderkin contain any express promise or guarantee concerning the quality of the well water to be supplied to Elderkin.

14. At the time Elderkin took possession of the premises, June 1, 1963, the house was substantially completed, except for the water supply which was completed several weeks thereafter.

15. The well and pump system were completed without defect in materials or workmanship.

16. Shortly after the water supply was completed, Elderkin caused the water to be tested by an expert July 29, 1963. Subsequent tests were made by the same and other experts at Elderkin's request November

11, 1963, March 9, 1964, February 16, 1965, November 24, 1967, and at two other times.

17. All tests showed that the water was unfit for human consumption in certain respects, particularly in the nitrate level.

18. It is practically impossible to remove nitrates from well water.

19. It is impossible to determine the quality of subsurface water a well will produce before the well is drilled.

20. Though water from the Elderkin well may be unfit for human consumption, water from another well on the same property, either at a new location on the property or at a new depth, may be good.

21. Though Gaster offered to drill a new well at his own expense, Elderkin refused the offer unless Gaster would guarantee the quality of the water.

22. To bring the nearest public water main to the Elderkin property would cost $13,795.00. An additional $302.00 would be necessary to install water service from the main to the house.

23. Elderkin has been possessed of and residing in the house built on Lot No. 5, Spring Valley, Middletown Township, Delaware County, Pa., since June 1, 1963, and does so to this day.

## DISCUSSION

Where parties enter into an agreement to convey land and build a house thereon, the single contract is, in a sense, severable into a contract to convey and a contract to build. The contract to convey is performed by delivery of the deed, but the contract to build is not: Raab v. Beatty, 96 Pa. Superior Ct. 574; Stewart v. Trimble, 15 Pa. Superior Ct. 513. The contract to build is performed by the erection of a structure in a reasonable and workmanlike manner, which, when com-

pleted, is reasonably fit for the purpose intended: McKeever v. Mercaldo, 3 D. & C. 2d 188.

Elderkin urges that where the builder is the developer of a large tract of ground, sells the ground and builds houses thereon, he is actually selling the ground as part of a package, including the ground and finished house. Under those circumstances, says Elderkin, the builder should be under an obligation to provide pure water under the rule of law that the completed house be reasonably fit for the purpose intended. No cases, however, are cited for the specific proposition that a house must be supplied with pure water in order that a contractor be said to have delivered a house reasonably fit for the purpose intended.

Gaster urges that his obligation to supply the house with well water should be treated as the legion of cases dealing with contracts to construct wells; that is, where there is no specific agreement concerning the quality of water to be produced by the well, the contract is satisfied by water of whatever quality found. See 55 A. L. R. 1550 f., et seq.

Turning to Elderkin's contention, a review of decisions concerning sales of completed houses, old or new, as compared with those cases dealing with contracts to construct houses, there is far more protection afforded Elderkin under the latter than the former case. Absent express warranties in the deed, fraud or concealment, the seller is not liable to the purchaser for latent defects where the sale is of a completed house, whether old or new-built. See 78 A. L. R. 2d 446-48. The single-package theory, pushed for by Elderkin, falls into the deep pit of caveat emptor, and will not be rescued by this court.

Leaving aside Elderkin's attempt at legal suicide, the law of this Commonwealth is clear that the instant

case does not deal with a single package purchase of a new home, rather with a contract to convey land and a separate contract to build a home: Raab v. Beatty, supra; Stewart v. Trimble, supra.

The outcome of this case, then, rests on the scope of the implied warranties in a contract to build a home. Generally stated, the builder impliedly warrants that the structure will be completed in a workmanlike manner, and that the end product will be reasonably fit for the use intended. A study of the decisions cited by Elderkin reveals that all are concerned with poor workmanship or materials. Where the defect complained of has been connected with the land, the warranty has always been applied to the improper handling of the construction site by the builder rather than the land itself. See Harrison v. Heagy, 81 Dauph. 7; Golin v. Sprignoli, 83 Dauph. 331; Raab v. Beatty, supra.

Applying these principles to the case sub judice, the court is of the opinion that Gaster impliedly warranted that the material and workmanship applied to constructing the Elderkin home were of workmanlike quality and free of defect. We have found the well to conform with that warranty. We are also of the opinion that Gaster did not impliedly warrant that the subsurface water under the Elderkin tract was fit for human consumption. As the deed of land to Elderkin carried with it the rights to the subsurface water, any warranties of its quality must have expressly appeared in the deed, and none did.

However, as there were no precise specifications in the agreement of the parties determining the depth of the well, we conclude that Gaster has not fully complied with his implied warranty of fitness for the use intended with regard to the Elderkin water well. Gaster's duty was to drill a well on Elderkin's lot which

would get water fit for human consumption, if available, and to drill the well no deeper than the deepest water-bearing strata in order to see if such water was available. In no sense, however, did he guarantee that such water would be found.

Accordingly, we enter the following:

## ORDER

And now, May 19, 1969, after consideration of the record, testimony, exhibits and briefs of counsel, it appearing that Gerald W. Gaster has not fully completed his contract to build a house for Richard L. Elderkin and Claire Helen Elderkin, specifically in that he did not drill a well to a depth sufficient to test the availability of water fit for human consumption and to supply such, if available, we hereby order and decree, in the matter of Richard L. Elderkin and Claire H. Elderkin v. Gerald W. Gaster that:

1(a). Gaster redrill the present well on Lot No. 5, Spring Valley, Middletown Township, Delaware County, Pa., or seal up that well and drill a new well on the same lot, to a depth sufficient to test the availability of water fit for human consumption and to provide an adequate supply of the same if available, but in any event to a depth no greater than the deepest water-bearing strata under the said lot; or in the alternative;

(b) should Elderkin not agree to allow Gaster to do the said work, such work shall be done by whoever is chosen by Elderkin, Gaster to pay the reasonable cost thereof, a condition of this alternative being that the contract for said work be in writing and subject to the approval of this court, which shall be granted upon approval by Gaster, or if Gaster does not so approve, upon hearing the matter in court. Gaster shall have the right to reasonable inspections of the

work in progress and to conduct reasonable tests of water obtained at his own expense.

2. Exceptions are granted to the parties, and, in the matter of Gerald W. Gaster v. Richard L. Elderkin and Claire Helen Elderkin, his wife, we find that Gaster has not completed his contract to build the Elderkin house, specifically with regard to the water supply, and that he thus is not entitled to the full balance of the sum remaining in the construction fund.

1. Upon completion of his contract in conformity with 1(a) of the above order, he shall be entitled to the full balance of the fund, or should the alternative course be taken as in 1(b) of the above order, Gaster shall be entitled to the balance, if any, of the fund after payment for the said work in conformity with the said order.

2. Exceptions are granted to the parties.

This court shall retain jurisdiction over both cases in this consolidated matter until final resolution in accordance with the findings and orders made heretofore or which may be made hereafter.

### DECREE NISI

And now, March 10, 1970, it appearing that the parties have attempted, but have not been able to resolve their differences; and that the order of this court filed May 19, 1969, contemplated further action by this court, it is hereby ordered and decreed that the order heretofore entered May 19, 1969, with the exception of the final paragraph therein, is re-entered as a decree nisi as of this date.

Exceptions may be filed within 20 days of this decree nisi. If exceptions are so filed, final decree shall await the outcome of argument before the court en banc.

## FINAL ORDER

Richard L. Elderkin and Claire Helen Elderkin, his wife (hereafter Elderkin), defendants in the assumpsit matter and plaintiffs in the equity matter, consolidated for trial before a judge sitting without a jury and chancellor in equity, filed exceptions to the court's finding of fact, conclusions of law, order and decree nisi.

Following argument of counsel before the court en banc, and after consideration of the record and briefs, it appearing that the findings of fact are supported by the record; the conclusions of law accurately are reflective of the law of this forum; and the order and decree nisi are appropriate under the circumstances, it is ordered and decreed that: the Elderkin exceptions be and the same are hereby dismissed; the findings of fact, conclusions of law, order and decree nisi are affirmed, December 2, 1970.